*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0180p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

GREGORY COBBINS,

        *Plaintiff-Appellant,*

    *v.*

TENNESSEE DEPARTMENT OF
TRANSPORTATION,

        *Defendant-Appellee.*

No. 07-6491

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 06-00073—Robert L. Echols, District Judge.

Argued: December 4, 2008

Decided and Filed: April 2, 2009[*]

Before: MERRITT, MOORE, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David E. Danner, Antioch, Tennessee, for Appellant. Steven B. McCloud, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** David E. Danner, Antioch, Tennessee, for Appellant. Steven B. McCloud, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

     MERRITT, Circuit Judge. This is an appeal from a jury verdict in favor of defendant, Tennessee Department of Transportation, in an action for race discrimination by plaintiff, Gregory Cobbins, pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* On appeal,

_____

    [*]This decision was originally issued as an "unpublished decision" filed on April 2, 2009. The court has now designated the opinion as one recommended for full-text publication.

1

Cobbins claims error in two evidentiary rulings by the district court: (1) the exclusion of an exhibit offered by plaintiff as hearsay due to the lack of an appropriate witness to lay the proper foundation for the document, and (2) the granting of a motion *in limine* in which the district court prohibited the admission of certain evidence from a prior action between the same parties. Because both rulings were in error, we reverse the judgment of the district court.

## I.

Plaintiff Greg Cobbins is an African-American male who has been employed by defendant Tennessee Department of Transportation as a maintenance worker in Lawrence County, Tennessee, since February 1994. In March 2004, plaintiff submitted an application to the Tennessee Department of Human Resources seeking promotion to one of several "career service" positions at the Department of Transportation. The Department of Human Resources is responsible for reviewing applications to verify that the applicants meet the minimum qualifications for the posted job. Applicants who meet the minimum requirements for a particular classification receive a civil service score based upon the applicable Department of Human Resources examination process.[1] The examination process assigns the score based on education, training and work experience typically required or associated with the job being sought. When an agency like the Department of Transportation needs to fill a "career service" position, the agency requests a "Certificate of Eligibles" from the Department of Human Resources. This is a list of the eligible applicants for the position in rank order by civil service score.

There are two types of certificates available to Tennessee agencies: "employment" (commonly referred to as "appointment") and "promotional." An agency may request either or both types of certificates when filling vacant positions. "Employment" certificates include the names of all eligible applicants listed in rank order of examination score and appointments from these certificates must be made from

---

[1] The same applicant can have a different civil service score for different positions, depending on how well the applicant's education and prior work experience match up with the requirements for a specific job. For example, plaintiff had a score of 70, the minimum qualifying score, for the job of Highway Maintenance County Superintendent 1, but had a score of 93 for the position of Highway Maintenance Worker 2.

the five highest ranking eligible applicants. "Promotional" certificates include only applicants who are already state employees with career status listed in rank order of examination scores. Appointments from these certificates must be made from the three highest ranking eligible applicants.

In May 2004, the Highway Maintenance County Supervisor position for Lawrence County became available and a certificate was issued for the position.[2] Plaintiff was not among the top five candidates and was not interviewed for the position at that time. However, in April 2005, after two higher-ranking applicants had declined the position, a third certificate was issued for the position and plaintiff was on the list of eligible applicants with a score of 76. Three other applicants were on the list, and all three had higher scores than plaintiff.[3] Two of the eligible applicants advised that they were not interested in the position, leaving plaintiff and Bradford Staggs, a white male with a score of 81, as the only two applicants interviewed for the job. Staggs was recommended for the promotion to the Highway Maintenance County Supervisor position. In a letter to the Director of Affirmative Action for the Department of Transportation, Winston Gaffron, a Regional Director with the Department of Transportation, noted Staggs' education, three more years of experience than plaintiff as a Highway Maintenance Worker 2, which is the level directly below the Supervisor position, and supervisory experience. Gaffron noted that plaintiff had less education, less work experience in the Highway Maintenance Worker 2 position, and no supervisory experience. Letter dated May 10, 2005, from Winston Gaffron to Sherrae Hall, Director of Affirmative Action for Tennessee Department of Human Resources. (J.A. at 97-98) Plaintiff also had several oral and written warnings in his work file. (J.A. 91-96) Staggs had no record of disciplinary action.

---

[2] The position of Highway Maintenance County Supervisor requires the successful applicant to assign, supervise and evaluate lower-level highway workers, supervise roadway and bridge preparation for paving and maintenance, supervise snow and ice removal from bridges and roadways, supervise maintenance and operation of small and heavy-duty machinery and other duties.

[3] The record does not reflect why only four instead of five candidates were on the list of eligible applicants for this position.

Plaintiff claims that he was deprived of the opportunity to fairly compete for the promotion to supervisor based on the bias and discrimination toward him due to race by his former supervisor, Wayne Yocum. The warnings in plaintiff's file were all received between 1998 and 2002 when Yocum, whom plaintiff had accused of racial discrimination in an earlier lawsuit, was plaintiff's supervisor. Plaintiff claims that Yocum improperly marred his work record with unfounded complaints, refused to give him supervisory responsibilities and generally treated him more harshly than white employees.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 20, 2005, which alleged that he had been subjected to continuing discrimination based upon race and had been retaliated against for having previously filed a charge and bringing a lawsuit against the Department of Transportation in 2004.[4] He received a right-to-sue letter on June 23, 2006, and filed his complaint in the Middle District of Tennessee on September 21, 2006, claiming denial of promotion, disparate treatment concerning the application process and retaliation for a protected activity. The district court granted in part and denied in part defendant's motion for summary judgment on September 25, 2007, leaving only the claim for discrimination in relation to promotion to go to trial. A two-day trial was held in November 2007, and the jury returned a verdict for defendant. Plaintiff filed a timely notice of appeal to this Court. On appeal, plaintiff challenges the district court's grant of a motion *in limine* that excluded certain evidence from plaintiff's earlier discrimination action against defendant and an evidentiary ruling at trial finding the promotion application of Bradford Staggs inadmissible as hearsay.

---

[4]Summary judgment was granted to the Department of Transportation and the prior lawsuit dismissed in 2005 due to plaintiff's failure to file a response to the Department of Transportation's summary judgment motion. *Cobbins v. Tenn. Dep't of Trans.*, No. 3:04-1056 (M.D. Tenn. Oct. 7, 2005). Plaintiff claims that his failure to file a response was due to the district court's then-new electronic filing system, which did not process his response to the summary judgment motion. Despite this claim, after receiving notice of judgment for the defendant, plaintiff did not move to reopen or reconsider for almost a year. While we state no opinion as to the appropriateness of the dismissal in the earlier action, the judgment was essentially a sanction for failure to respond to defendant's summary judgment motion and cannot be construed as a judgment on the merits.

## II.

### A.  Exclusion of Staggs' Promotion Application as Hearsay

Plaintiff attempted to enter into the record the promotion application of Bradford Staggs, the person who ultimately received the Supervisor position.  Plaintiff alleges that Staggs lied about his  educational level on his promotion application, thereby giving Staggs an unfair advantage in the promotion process over plaintiff.  Specifically, Staggs stated on his application that he had "postsecondary education after high school" during the years 1991-1995.  Staggs did not graduate from high school until 1995, so any education between 1991 and 1995 could not have been "postsecondary" education.  Plaintiff's plan at trial was to impute knowledge of this alleged falsehood to the neutral decisionmakers who chose Staggs over plaintiff for the position.[5]  Plaintiff's counsel attempted to introduce the document through plaintiff.  The document was a form provided by the state and completed by Staggs.  Defendant objected to the document as hearsay.  Plaintiff's counsel stated during a sidebar that he believed the document to be a "public record" and, therefore, an exception to the hearsay rule under Federal Rule of Evidence 803(8).[6]  The district court suggested that perhaps counsel could get the document in under the business records exception to the hearsay rule using a state employee as a custodian of records.  However, no witness present had sufficient knowledge of the state's recordkeeping system to qualify as a custodian of records under

---

[5]In the employment discrimination context, what is known as the "cat's paw" theory refers to a situation in which a biased subordinate, who lacks decisionmaking power, influences the unbiased decisionmaker to make an adverse hiring decision, thereby hiding the subordinate's discriminatory intent. *EEOC v. BCI Coca-Cola Bottling Co.,* 450 F.3d 476, 484 (10th Cir.  2006),; *see also Arendale v. City of Memphis,* 519 F.3d 587, 604 n.13 (6th Cir.  2008) ("When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability.").

[6]Federal Rule of Evidence 803, Hearsay Exceptions, states that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 . . .

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Federal Rule of Evidence 803(6). Staggs' promotion application was never entered into the record.

On appeal, plaintiff claims that his case-in-chief was greatly harmed by his inability to enter Staggs' allegedly false application into the record and it was error to exclude the document. He argues that an employment application submitted to the state is required to be received and maintained by the State in accordance with certain personnel rules and it is, therefore, admissible as a public record. Moreover, the parties stipulated to the authenticity of the document. Amended Joint Proposed Stipulations, *Cobbins v. Tenn. Dep't of Trans.*, No. 1:06-cv-00073, (M.D. Tenn. Oct. 24, 2007) (J.A. at 140).

We first question whether this document constitutes hearsay at all — that is, was it introduced to prove the truth of the matter asserted about the discriminatory intent of the State in not promoting plaintiff? Although plaintiff did not make this argument at trial or on appeal, the allegedly false application does not seem to go to the alleged discriminatory intent by either Yocum or the State. Plaintiff may have been merely trying to point out a mistake in the records the State decisionmaker used to make the promotion decision and possibly allude to the bad character of Staggs in filing a false application. As this argument was not addressed by the parties, it is difficult for us to make the call here except to note that the document may not even be hearsay. In any event, even if the document is hearsay, it should have been admitted under one or more exceptions to the hearsay rule.

The disputed evidence could conceivably fall into either of two long-established exceptions to the rule against hearsay, those for business or government records. The question is whether the fact that the application, a business document maintained by a state agency, an act which implies some endorsement of its authenticity, is such an adequate assurance of trustworthiness that the contested document may be admitted under 803(8) without further foundation. Looking to the plain language of Rule 803(8), the employment application of a specific person may fall within that body of records generally considered under the public records exception. *See generally United States*

*v. Regner*, 677 F.2d 754, 761 (9th Cir.1982); *Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096 (D. Ohio 1981).  However, Rule 803(6),[7] the business record exception, appears as the most relevant hearsay exception to permit admission of Staggs' application into the record.

The business records exception is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business.  An employer's independent motivation for creating and maintaining reliable business records obviates the need for sworn testimony and cross-examination.  A business record is admissible under Rule 803(6) where a sufficient foundation for reliability is established.  Business records are properly admitted under the business records exception to the hearsay rule if they satisfy four requirements: (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *Redken Labs, Inc. v. Levin,* 843 F.2d 226, 229 (6th Cir. 1988).

The district court erred in refusing to allow plaintiff to introduce into the record the employment application of a coworker.  The document, if hearsay at all, falls within the exception for business records and possibly public records as well.  Moreover, the authentication of the document through the parties' stipulation minimizes any question about the trustworthiness of the document and obviates the need to introduce the record

---

[7]Federal Rule of Evidence 803(6) identifies one of the exceptions to the general hearsay prohibition:

> Records of regularly conducted activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

through someone who had actual knowledge of its content, such as Staggs himself, or through a custodian of records for the State. *United States v. Pluta,* 176 F.3d 43, 49 (2d Cir.1999); *United States v. Robbins,* 197 F.3d 829, 838 (7th Cir.1999); *United States v. Chang,* 207 F.3d 1169, 1176 (9th Cir.2000) (all stating that the proponent of evidence has the burden of proof and must lay appropriate foundation). Therefore, the document should have been admissible under Federal Rule of Evidence 803(6), the business records exception, and possibly other exceptions as well.

**B. Excluded Testimony Concerning Plaintiff's Prior Claims of Race Discrimination**

Before trial, defendant filed a motion *in limine* seeking to exclude "any testimony or documentary presentation" regarding "the factual claims and allegations that Plaintiff asserted in a prior lawsuit against TDOT." The prior lawsuit was between the same parties and contained claims of discrimination in the form of disparate discipline, unfair job assignments, and racial harassment. Defendant was granted summary judgment in that case because plaintiff failed to file a timely response to defendant's motion for summary judgment. Specifically, defendant sought to exclude in this case factual evidence involved in the prior action regarding discipline that was or was not imposed by plaintiff's then-supervisor, Wayne Yocum. Plaintiff opposed the motion, arguing that a supervisor's discriminatory animus may be imputed to the neutral decision-maker concerning the promotion.

The district court granted defendant's motion to prohibit plaintiff from introducing evidence as it relates to facts and allegations involved in the prior case. The district court found evidence concerning Yocum's bias toward plaintiff was not relevant to this action because it was resolved in defendant's favor in the prior action and could not be imputed to the decisionmakers in this case because Yocum was not plaintiff's supervisor at the time he applied for the Highway Maintenance County Supervisor position. The district court also ruled that even if relevant, such evidence should be excluded under Rule 403 as more prejudicial than probative.

On appeal, plaintiff argues that the trial court committed reversible error by excluding evidence of his former supervisor's "discriminatory animus and motive"

toward African-Americans.  Plaintiff argues that this disparate treatment in discipline by his former supervisor is relevant in the current proceeding because Yocum's conduct marred his work record and his opportunity for promotion.  Plaintiff is not seeking to relitigate the claims from the earlier suit.  Plaintiff seeks only to demonstrate that certain conduct and actions of his supervisor at that time impacted his work record and promotion chances; and such evidence is, therefore, relevant in this case.

We agree with plaintiff.  Contrary to defendant's argument, collateral estoppel does not bar evidence of plaintiff's former supervisor's animus that may have adversely impacted his work record and chances for promotion because the judgment in the first lawsuit was not on the merits.[8]  The judgment was not a dismissal on the merits, but a dismissal for failure to prosecute.

Issue preclusion, or collateral estoppel, bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit.  *See* Restatement (Second) of Judgments § 13 (1982) (" for purposes of issue preclusion . . ., 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").  Four specific requirements must be met before collateral estoppel may be applied to bar litigation of an issue: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have *resulted in a final judgment on the merits*; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.  *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328,

---

[8]As explained above, plaintiff did not respond to defendant's summary judgment motion in the first lawsuit because he claims he did not receive notice of defendant's filing.  However, plaintiff waited over a year after the case had been dismissed to file a Motion to Set Aside the Order of Dismissal.

330 (6th Cir. 1987).  In determining whether the defensive use of collateral estoppel is appropriate, the court must also consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. Restatement (Second) Judgments § 29 (1982).

It is clear that the prior lawsuit was dismissed for plaintiff's failure to respond to the summary judgment motion.  Even if it can be argued that the dismissal was plaintiff's fault because he had a "full and fair opportunity to litigate" the issue and did not exercise it, there is no question that the suit was dismissed without a judgment on the merits and without a decision on any issue apart from plaintiff's failure to prosecute the prior lawsuit.

For the foregoing reasons, the judgment of the district court is reversed and the case remanded to the district court for proceedings consistent with this opinion.