NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0696n.06

Case No. 09-6308

FILED

**Sep 30, 2011**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MICHAEL GARDNER,

    Plaintiff-Appellant,

    v.

UNITED STATES OF AMERICA,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE: BOGGS and CLAY, Circuit Judges; and TARNOW,[*] Senior District Judge.

**TARNOW, Senior District Judge.** Plaintiff-Appellant Michael Gardner filed suit under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. §1346, 2671, et seq., against Defendant-Appellee United States, alleging that due to the negligence of the government, through its employees, in failing to treat his condition, he suffered from an impaired mental state that caused him to be charged with aggravated assault and sentenced to a term of incarceration. The United States filed a motion to dismiss, which the district court granted. Gardner now appeals. Gardner also filed a motion asking us to certify two questions of state law to the Tennessee Supreme Court. For the reasons that follow, we **AFFIRM** the district court's dismissal of Gardner's complaint and **DENY** the motion for certification.

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

On October 7, 2003, Gardner entered a Veterans Affairs hospital in Murfreesboro, Tennessee with a shotgun and other firearms and opened fire on employees. Gardner was charged on November 10, 2003 in a nine-count criminal complaint with three counts of attempting to kill an employee of the United States, four counts of forcibly assaulting and intimidating an employee of the United States, one count of using, carrying, and discharging a firearm during and in relation to a violent crime, and one count of knowingly possessing a firearm in a federal facility, with intent to use it in the commission of a crime.

On December 10, 2004, Gardner pled guilty to aggravated assault under 18 U.S.C. §111. He was sentenced in February 2005 to eight of years imprisonment, three years of supervised release, and a $100 special assessment.

On December 21, 2006, Gardner filed this suit under the FTCA in federal district court in Tennessee against the United States, alleging that government employees were negligent in treating him between July 2002 and October 2003. He states that due to this negligent treatment:

> Gardner became suicidal, dangerous and, left untreated, acted violently resulting in conviction and imprisonment. Specifically, Defendant's employees/agents were negligent in failing to timely diagnose, manage and treat Michael Gardner for his depression and mental instability, which resulted in pain and suffering, emotional distress, permanent impairment, suicidal thoughts, impaired memory, a major depressive disorder, acute stress disorder and disassociative amnesia. As a direct and proximate result of the above negligent acts, negligent omissions, negligent medical treatment and/or medical malpractice by the Defendant's, agents, employees and/or servants, Plaintiff Michael Gardner suffered a complete mental breakdown causing him to be charged with aggravated assault and sentenced to federal incarceration for eight (8) years.

Compl. at 2. The complaint sought "damages resulting from the negligent treatment . . ., including pain, suffering, mental anguish, loss of enjoyment of life, loss of earning capacity, and loss of liberty" and requested a two-million-dollar judgment. *Id.* at 3.

Gardner subsequently moved to file an amended complaint, which the district court permitted over the government's opposition. The amended complaint added one paragraph to the original complaint, specifically including an allegation that Gardner was insane when he committed the aggravated assault for which he had pled guilty. The added paragraph states:

> Plaintiff alleges that he was not of sound mind, had suffered a complete mental breakdown, was insane and not capable of appreciating the differences between right and wrong at the time he committed the acts as alleged in the criminal proceedings for which he was charged and pleaded guilty resulting in his sentencing to a federal prison. Plaintiff Michael Gardner's impaired mental condition was the proximate result of the negligence of the United States, through its employee(s) in failing to treat him for his emotional and mental disorders in accordance with the recognized standards of professional practice.

Am. Compl. at 2.

The government moved to dismiss the amended complaint on August 15, 2007, arguing that Gardner's claims were barred by collateral estoppel and, citing to various cases including *Moss v. Mid-South Hospital*, 1989 WL 134666 (Tenn. Ct. App. 1989) (unpublished), Tennessee public policy.

Gardner argued in response that collateral estoppel did not apply. Noting that *Moss* was unpublished, Gardner also filed a motion to certify to the Tennessee Supreme Court the question: "Whether under Tennessee law a Plaintiff may bring a medical malpractice case based upon psychiatric malpractice where it is alleged that as a result of a mental healthcare provider's

psychiatric malpractice the Plaintiff committed, while of unsound mind and insane, criminal acts which resulted in incarceration." Mot. for Certification of Questions of State Law to Tenn. Sup. Ct. at 1. Gardner's certification motion maintained that an Illinois Court of Appeals case, *Boruschewitz v. Kirts*, 197 Ill. App. 3d 619 (Ct. App. 1990), cited *Moss* but did not follow its holding and that the Tennessee Supreme Court had not ever reached the issue addressed in *Moss*.

On April 7, 2008, the district court denied the certification motion without any explanation, stating only that the motion was reviewed and was being denied.

On September 30, 2009, the district court granted the government's motion to dismiss. Although the district court cited *Moss* in its order, it did not rely on Tennessee public policy as a ground for dismissing the amended complaint. Rather, it concluded that collateral estoppel barred Gardner's claims. The court observed that Gardner had pled guilty to aggravated assault under 18 U.S.C. §111 and found that he "had a full and fair opportunity to litigate the issue of his mental state"; therefore, he could not now claim insanity at the time of his criminal acts and "prove that the medical malpractice was the proximate cause of his harm alleged: his incarceration for aggravated assault." Order and Mem. Op. Granting Summ. J. at 5.

Gardner now appeals. Additionally, he moves this Court to certify two questions of state law to the Tennessee Supreme Court, including the question he had previously asked the district court to certify, as well as the question of whether collateral estoppel bars his claims under Tennessee law.

4

## II. DISCUSSION

### A. Standard of Review

This court "review[s] de novo the district court's ruling on a motion to dismiss a claim."

*Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). In order to defeat a motion to

dismiss, a party's:

> complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. [T]he complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, and state a claim to relief that is plausible on its face.

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citations and internal quotation

marks omitted). Moreover,:

> In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. This circuit has further held that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.

*Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citations, internal quotation marks, and

emphasis omitted).

Additionally, "[t]he availability of collateral estoppel is a mixed question of law and fact

which this court reviews de novo." *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999).

Finally, "[i]t is an established principle of law that a reviewing court can sustain the judgment

of a lower court on any ground that finds support in the record[,]" *United States v. Anderson County*,

761 F.2d 1169, 1174-1175 (6th Cir. 1985), "including grounds not relied upon by the district court."

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

**B. Discussion**

**1. FTCA**

Gardner filed this suit under the FTCA, which grants federal district courts jurisdiction over civil actions seeking money damages against the United States for personal injury caused by negligence of government employees acting within the scope of their employment "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1); *see also Massachusetts Bonding & Ins. Co. v. United States*, 352 U.S. 128 (1956). Here, the underlying acts occurred in Tennessee; thus, its substantive law controls. Under Tennessee law, "a plaintiff bringing a negligence action must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403 (6th Cir. 2004) (citations and internal quotation marks omitted).

While state law guides the underlying negligence claim, the parties do not dispute that federal law controls the question of whether collateral estoppel bars this action.[1] *See* Resp. to Certification Mot. at 4; Reply to Certification Mot. at 2.

### 2. Collateral Estoppel

Collateral estoppel applies to a federal court's decision if:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Smith v. SEC*, 129 F.3d. 356, 362 (6th Cir. 1997).

Furthermore, "[n]o rule of law precludes a prior criminal conviction from having preclusive effect in a subsequent civil proceeding between the government and the defendant." *Beaty*, 245 F.3d at 624. "A guilty plea is as much a conviction as a conviction following [a] jury trial." *Gray v. Comm'r*, 708 F.2d 243, 246 (6th Cir. 1983) (affirming lower court's ruling that collateral estoppel barred plaintiff's complaint and observing that "[n]umerous federal courts have held that a conviction for federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilt,

---

[1] In discussing the elements of the collateral estoppel doctrine, the district court referred to the elements set forth in *United States. v. Beaty*, 245 F.3d 617, 624 (6th Cir. 2001) and also cited to *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus, federal law was considered. Although the Fifth Circuit has concluded that federal collateral estoppel rules apply to FTCA claims, this Court has not resolved the issue, although at least one district court in this Circuit has concluded that federal law applies. *See Donohue v. United States*, 2006 WL 2990387 at *4 (S.D. Ohio 2006) (citing to *Johnson v. United States*, 576 F.2d 606 (5th Cir. 1978)). Nevertheless, since the parties do not dispute the issue, we assume that federal rather than state law controls.

conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel.")

### a. Gardner's failed arguments

Gardner argues on appeal that the district court erred in granting the motion to dismiss based on collateral estoppel. He maintains that the district court's "implied reasoning process appears to have been that pleading guilty to a crime of intent somehow foreclosed proof of causation with respect to the VA's prior negligent treatment." Br. of Appellant at 11. According to Gardner, Tennessee law does not foreclose a psychiatric malpractice action simply because a person pleads guilty to a crime or commits an intentional act. In support of this argument, Gardner cites a line of Tennessee state cases involving situations where individuals committed suicide and suits were then brought against care providers.[2]

Gardner's "suicide" argument (and the cases offered in support) was never raised below and is therefore forfeited. *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) ("This court has repeatedly held that it will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice") (citation and internal quotation marks omitted). However, irrespective of forfeiture, Gardner's argument lacks merit, as the cited cases specifically involve the intentional act of suicide (which is not illegal under

---

[2] *See Stewart v. Fakhruddin*, 2010 WL 2134150 (Tenn. Ct. App. 2010); *White v. Lawrence*, 975 S.W.2d 525 (Tenn. 1998); *Drake v. Williams*, 2008 Tenn. App. LEXIS 240 (Ct. App. 2008). Gardner also cites to *Rains v. Bend of the River*, 124 S.W.3d 580 (Tenn. Ct. App. 2003), where the parents of a man who committed suicide brought suit against the seller of the ammunition used by the decedent.

Tennessee law, despite Gardner's claims—without citation—to the contrary[3]) and were suits

resulting from failure to provide proper medical care. None of those cases involve an individual who

*waived an insanity defense*, plead guilty to a general intent crime in federal court, and then brought

suit against their medical provider claiming the provider's negligence *made them insane* and caused

them to commit the crime.[4] Those cases do not even discuss the issue of collateral estoppel.

Gardner also contends that, when he pled guilty, he never conceded that improper medical

care was not a factor in his criminal acts and thus this issue, which is the gravamen of this suit, was

never actually litigated. His state of mind, in his view, "is irrelevant" to his civil action. However,

this argument misses the mark, as Gardner's entire complaint is premised on a claim of negligent

treatment that resulted in his becoming insane and then committing the underlying offenses. Indeed,

Gardner amended his complaint to include the allegation that he was insane when he committed

aggravated assault. In such a suit, the fact finder would thus have to evaluate his state of mind.

Gardner further directs the court to an Illinois state-court decision, *Talarico v. Dunlap*, 177

Ill. 2d 185 (1997), and a Kentucky state-court decision, *Gossage v. Roberts*, 904 S.W.2d 246 (Ky.

1995), maintaining that those cases support a holding that collateral estoppel does not bar the claims

---

[3] Assisting someone in suicide is a crime under Tennessee law. *See* Tenn. Code Ann. § 39-13-216. An individual is also permitted to use force to prevent a suicide. Tenn. Code Ann. § 39-11-613. However, the act itself is not illegal.

[4] Gardner also cites *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997) but that case has no bearing on the instant matter. Collateral estoppel and the public policy issues raised in the instant matter were not discussed. The case also involved a suit against a psychiatrist by a victim of an attack, not a situation where the attacker was suing the psychiatrist.

at issue here.  Gardner's reliance on these cases is misplaced, as both are state-law cases that do not determine what federal law is regarding collateral estoppel.

### b. Gardner's differing standards argument

Gardner additionally argues that since the test for establishing insanity in civil cases in Tennessee differs from the test for proving insanity in federal criminal proceedings, the issue of insanity being litigated in this matter is unlike what was addressed in the prior proceedings and collateral estoppel would therefore not apply.  The government argued before the district court that the test for insanity is the same in both the criminal and civil contexts.

The district court found that Gardner pled guilty in his criminal case to aggravated assault under 18 U.S.C. §111, which is a general-intent crime that "requires only that a defendant intend to do the act that the law proscribes."  *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001) (citation and internal quotation marks omitted).  Gardner acknowledged that he was pleading guilty because he was guilty and that he was "entering into this plea after being advised of and understanding the potential for raising defenses and seeking sentencing departures based upon mental health issues[.]"  Tr. of Plea Hr'g Ex. 2, Dec. 10, 2004, at 14 (emphasis added).  The district court found that "[b]ecause Plaintiff cannot relitigate the question of his intent, he cannot now assert that medical malpractice resulted in a complete mental breakdown– *rendering him insane and therefore devoid of intention*– at the time of the criminal acts."  Order and Mem. Granting Summ. J. at 5 (emphasis added).

We hold that the district court was correct that the issue of intent, for purposes of the instant action, was already determined by Gardner's guilty plea in his criminal case. Gardner, by his plea, admitted he intended to do the act of aggravated assault. He cannot now deny that in this action.[5]

Under federal law, insanity is an affirmative defense that may be raised in a criminal case. 18 U.S.C. §17 states: "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." The defendant must prove this defense by "clear and convincing evidence." *Id*. Gardner waived this insanity defense in his criminal case and pled guilty, thus conceding that he was not insane under the federal standard at the time he committed his crime. Therefore, Gardner cannot now claim in his civil suit that, under the federal insanity standard, he actually was insane at the time he committed the act.

Accordingly, if the Tennessee standard for establishing insanity in civil cases contained the same elements and required the same standard of proof as the federal standard, then collateral estoppel, as the district court found, would bar Gardner's suit.

On the other hand, if Gardner were correct that the elements and standard of proof for establishing insanity differ in the civil negligence context from the criminal context, his guilty plea would not foreclose his ability to raise issues in this action regarding his mental state *under Tennessee law*. A finding that he was insane under a state standard for insanity that differed from

---

[5] Proof of his plea regarding his acts would be admissible in a trial in civil suit. *See* Fed. R. Evid. 803(22).

the federal standard (in that the elements differ and the standard of proof differ) would not conflict with a conclusion in the negligence action that he intended to commit the act of aggravated assault, which was necessary element. Such a finding would not negate his intent. *See United States v. Allen*, 449 F.3d 1121, 1125 (10th Cir. 2006) ("insanity is, as the statute expressly says, an affirmative defense. The fundamental concept of an affirmative defense is that it does not negate an element of the adversary's case."); *see also United States v. Vela*, 624 F.3d 1148, 1156 n.11 (9th Cir. 2010) ("We are satisfied that a jury could reasonably find that an insane person had a specific intent to commit a crime and yet was unable to appreciate the nature and quality or the wrongfulness of his acts") (citation and internal quotation marks omitted); *United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998) ("insanity is a defense to all crimes, regardless of whether they require general or specific intent"); *United States v. Willis*, 1999 U.S. App. LEXIS 18298 at *18 (6th Cir. 1999) (unpublished) ("We think it is important to distinguish between the use of psychological testimony to negate an element of the crime and the use of such testimony as an affirmative defense to the crime.")

It is ultimately unnecessary for this Court to resolve the parties' dispute as to what the proper elements and standard of proof are under Tennessee law for establishing insanity in a Tennessee civil negligence action, as the district court's ruling may be affirmed on grounds other than collateral estoppel.

### 3. Public Policy

Although the government argued before the district court that Tennessee public policy barred Gardner's claims, that court did not reach a decision on the issue. However, this ground also supports the dismissal of the suit.

In *Moss,* 1989 WL 134666, an individual convicted of murder filed a negligence action against medical providers alleging that, as a result of their negligent treatment, he suffered from mental illness and committed murder. The Tennessee Court of Appeals observed: "According to our research, this is the first time a Tennessee appellate court has had an opportunity to address the issue of whether a mental health care provider is subject to liability for injury to a former patient caused by the former patient's conviction of a crime. Very few courts throughout this country have addressed this issue." *Id.* at *2. The court went on to hold that Tennessee recognizes the general rule:

> that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or to maintain a claim for damages based on his own wrong or caused by his own neglect, . . . or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws . . . .

*Id*. at *2 (citation omitted). Since the plaintiff was seeking recovery for an injury caused by his own criminal acts, the court concluded "that it would be, plain and simply, wrong as a matter of public policy to allow recovery." *Id*. at *2 (citation and internal quotation marks omitted).

The government argued before the district court that *Moss* barred this suit. In response, Plaintiff relied on a decision from the Illinois Court of Appeals, *Boruschewitz v. Kirts*, 197 Ill. App. 3d 619 (Ct. App. 1990), where a plaintiff who plead guilty but mentally ill to murder brought suit

13

against medical providers for negligent treatment that he alleged led him to commit his illegal act. The court found that the suit did not violate *Illinois public policy* and allowed it to proceed.

Gardner again cites *Boruschewitz* on appeal in support of his argument that Tennessee public policy permits this suit. However, the Illinois Supreme Court's decision that Illinois public policy did not bar the suit before it has little relevance to what Tennessee public policy permits.[6]

Gardner also argues on appeal that the line of cases cited above regarding suicide demonstrates that public policy permits this suit. However, that argument was not raised below and is therefore forfeited. Regardless of forfeiture, Gardner's argument fails, as those cases do not even discuss Tennessee public policy pertaining to recovering damages for one's own criminal acts. As addressed above, they involve suits by parties against medical providers following a suicide, whereas this case involves a party who waived a federal insanity defense, pled guilty to committing a felony, and is now attempting to recover damages based on claims that the negligence of medical providers caused him to go insane and commit the acts.

Although *Moss* is an unpublished case and is therefore not controlling, it still may serve as persuasive authority. *See Hood v. Keller*, 229 F. App'x 393, 398 n.5 (6th Cir. 2007) (unpublished) (unpublished decisions of this Court "may constitute persuasive authority especially where there are no published decisions which will serve as well") (citation and internal quotation marks omitted); *see also Eady v. Morgan*, 515 F.3d 587, 601 (6th Cir. 2008). Its facts are analogous to those in the

---

[6] Prior to oral argument, Gardner submitted supplemental authority in support of his public policy argument. However, the Georgia Court of Appeals' decision in *Bruscato v. O'Brien*, 307 Ga. App. 452 (Ct. App. 2010) has no bearing on Tennessee law.

instant suit. Gardner has not offered a sufficient reason why this Court should disregard Tennessee

public policy as enunciated in *Moss* and instead rely on out-of-state cases and a line of Tennessee

cases that does not address the public policy concerns raised in this matter.

Tennessee public policy therefore bars Gardner's complaint.

### 4. Motion for Certification

Finally, Gardner moves this Court to certify two questions to the Tennessee Supreme Court:

1) Whether under Tennessee law a Plaintiff is collaterally estopped (by virtue of a guilty plea to criminal charges) from pursuing a medical malpractice case based upon psychiatric malpractice where it is alleged that as a result of a mental healthcare provider's psychiatric malpractice the Plaintiff committed, while of unsound mind and insane, criminal acts which resulted in a voluntary guilty plea and incarceration.

2) Whether under Tennessee law a Plaintiff may bring a medical malpractice case based upon psychiatric malpractice where it is alleged that as a result of a mental healthcare provider's psychiatric malpractice the Plaintiff committed, while of unsound mind and insane, criminal acts which resulted in incarceration. *Compare Moss v. Mid-South Hospital*, 1989 WL 1934666 (Tenn. Ct. App. 1989) *with Boruschewitz v. Kirts*, 197 Ill. App. 3d 619 (Ct. App. 1990).

Br. of Appellant at 1.

"As the certification of an issue of state law to a state supreme court is a matter of the district

court's discretion, we review certification decisions for an abuse of discretion." *Murphy v. Owens-*

*Corning Fiberglas Corp.*, 1997 U.S. App. LEXIS 30530 at *10-11 (6th Cir. 1997) (international

citation omitted) (unpublished). This Court has found that "[c]ertification is most appropriate when

the question is new and state law is unsettled. As the Tenth Circuit has noted, however, the federal

courts generally will not trouble our sister state courts every time an arguably unsettled question of

state law comes across our desks. When we see a reasonably clear and principled course, we will

15

seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citations and internal quotation marks omitted).

Gardner's request for certification of the first question, which was not raised before the district court, lacks merit since both parties agree that the issue of whether collateral estoppel bars the claims at issue is a question of federal law. Appellant's Mot. Reply at 2.

The district court did not abuse its discretion in denying Gardner's certification motion as to the second question, where the only basis for certification Gardner offered was that the Tennessee Court of Appeals' decision in *Moss* was unpublished and the Illinois Court of Appeals in *Boruschewitz* concluded that plaintiff's suit was not barred by Illinois public policy. How the Illinois state courts interpret Illinois law has no bearing on how a Tennessee state court interprets Tennessee law.

Gardner also makes additional arguments regarding certification not raised below. Regardless of forfeiture, the arguments lack merit, as Gardner again relies on the line of "suicide cases." As already discussed, said cases are not relevant to the issue of whether this suit may proceed. Gardner further maintains that Tenn. Sup. Ct. R. 23 permits certification when there is no controlling precedent on an issue but, as discussed above, there is persuasive authority supporting the conclusion that public policy bars this suit.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal and **DENY** Gardner's certification motion.

**CLAY, Circuit Judge, concurring in the judgment.** While I join the lead opinion in the conclusion that the district court did not err in dismissing Gardner's claim under Rule 12(b)(6), I write separately both to clarify the issue of whether Gardner's Federal Tort claim is barred by the doctrine of collateral estoppel, and because I believe that the better path to resolving the issues presented in this case would be to find that Gardner has failed to plead a sufficient factual basis to make a plausible showing of each element of his claims of failure to warn and psychiatric malpractice under Tennessee law.[1]

## I.      Collateral Estoppel

### A.      Legal Framework

A party to litigation is collaterally estopped from raising an issue when:

(1)    the issue in the subsequent litigation is identical to that resolved in [an] earlier litigation,
(2)    the issue was actually litigated and decided in the prior action,
(3)    the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,
(4)    the party to be estopped was a party to the prior litigation (or in privity with such a party), and
(5)    the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005).

In addition to the considerations outlined above, "[i]n determining whether the defensive use of collateral estoppel is appropriate, the court must also consider whether . . . it would be otherwise

---

[1]Though the insufficiency of Gardner's pleadings was not the district court's primary basis for dismissal under Rule 12(b)(6), this Court "may affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

unfair under the circumstances to permit the use of collateral estoppel." *Cobbins v. Tennessee Dept. of Transp.*, 566 F.3d 582, 590 (6th Cir. 2009).

We have held that collateral estoppel can be applied when the prior suit is criminal and the subsequent suit civil, as long as the issues presented are identical. *See United States v. Beaty*, 245 F.3d 617, 624 (6th Cir. 2001) ("No rule of law precludes a prior criminal conviction from having preclusive effect in a subsequent civil proceeding between the government and the defendant."); *see also Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding.")

### B. Elements of Plaintiff's Criminal Conviction and Civil Suit

Gardner was convicted, by way of guilty plea, of one count of forcibly assaulting and intimidating an employee of the United States, in violation of 18 U.S.C. § 111. The statutory elements of assaulting a federal employee are as follows:

(a) In general.–Whoever–

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;
> . . .

shall . . . where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced penalty.–Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18

18 U.S.C. § 111.

Therefore, "Section 111(a)(1) contains four distinct elements; the government must show that the defendant: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). "The element of force necessary for a conviction under this statute may be shown by 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.'" *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999) (quoting *United States v. Street*, 66 F.3d 969, 977 (8th Cir. 1995)).

We have held that assaulting a federal officer, as defined in 18 U.S.C. § 111, is a general intent crime. *See Kimes,* 246 F.3d at 808. "Even to show general intent, however, 'the Government must prove beyond a reasonable doubt that the defendant knowingly, consciously, and voluntarily committed an act which the law makes a crime.'" *Id.* at 807 (quoting *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994)).

Because Gardner brought his civil suit under the Federal Tort Claims Act, this Court looks to the substantive law of the state where the alleged claim arose to determine the standard for liability. *See Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010). Tennessee has both a statutory tort of failure to warn by a mental health professional, and a common law tort of psychiatric medical malpractice. Under the statutory tort,

> IF AND ONLY IF
>
> (1) a service recipient has communicated to a qualified mental health professional or behavior analyst an actual threat of bodily harm against a clearly identified victim, AND

19

(2) the professional, using the reasonable skill, knowledge, and care ordinarily possessed and exercised by the professional's specialty under similar circumstances, has determined or reasonably should have determined that the service recipient has the apparent ability to commit such an act and is likely to carry out the threat unless prevented from doing so,

THEN

(3) the professional shall take reasonable care to predict, warn of, or take precautions to protect the identified victim from the service recipient's violent behavior.

Tenn. Code Ann. § 33-3-206 (West 2010).

Tennessee also has a common law tort of psychiatric negligence or psychiatric medical malpractice. In order to present a *prima facie* case of psychiatric negligence, the plaintiff must show "[1] a duty of care owed by the defendant to the plaintiff; [2] conduct falling below the applicable standard of care that amounts to a breach of that duty; [3] an injury or loss; [4] cause in fact; and [5] proximate cause." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996).

"The existence or nonexistence of a duty owed to the plaintiff by the defendant is a question of law to be determined by the court." *Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn. 2003) (citing *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). In addition to determining whether a defendant "stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger," *Turner v. Jordan*, 957 S.W. 2d 815, 818 (Tenn. 1997), "considerations of public policy are also crucial in determining the existence of . . . legal duty." *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn. 1997).

A showing of proximate cause and cause in fact require the following:

Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act . . . . In contrast, proximate cause, or legal cause,

20

concerns a determination of whether legal liability should be imposed where cause in fact has been established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.

*Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n. 6 (Tenn.1997) (internal quotations omitted). Therefore, in order to prove the fourth element of the medical malpractice tort, a plaintiff must show that a defendant was the "but for" cause of the injury claimed, though under Tennessee law the plaintiff need not show that the defendant was the sole cause of the injury. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 747 (M.D. Tenn 2010). In order to demonstrate proximate cause, the plaintiff must show legal causation.

### C.    Analysis

It is clear, upon analysis, that the issues presented in Gardner's criminal conviction and his civil litigation are not identical. Accordingly, collateral estoppel does not bar his current claim, and the district court erred in concluding otherwise.

In determining that Gardner was collaterally estopped from pursuing his medical malpractice suit, the district court found that Gardner,

> admitted his intent to commit the assaults for which he was sentenced . . . . Through the plea, Plaintiff knowingly waived his right to go to trial to contest his intent and state of mind. The Court believes that Plaintiff had a fair and full opportunity to litigate the issue of his mental state . . . . Because Plaintiff cannot relitigate the question of his intent, he cannot now assert that medical malpractice resulted in a complete mental breakdown—rendering him insane and therefore devoid of intention—at the time of the criminal acts.

(R. 44: Dist. Ct. Op. at 5.)

21

Though neither the district court nor the government make the point explicitly, the district court's collateral estoppel ruling is necessarily premised on the idea that the criminal adjudication of Gardner's "general intent" to commit assault is an issue that is identical to the "cause in fact" element of the Tennessee common law psychiatric malpractice tort. The district court's opinion also relies on its understanding that Gardner would be required to prove that he was criminally insane at the time of his crime, or at least that he did not "knowingly, consciously, and voluntarily" commit the crime, in order to present a *prima facie* case of psychiatric malpractice.

Under a pure statutory reading, the offense of assault on a federal officer and the tort of psychiatric medical malpractice do not share common elements. On the contrary, neither the statutory nor common law torts of medical negligence/malpractice require a showing of the patient's diminished capacity or intent. Nor does a finding that a patient intended to commit the harm for which he brings suit preclude the finding of "but for" causation.

Under Tennessee law, a patient or a third party may sustain a claim for psychiatric malpractice, under the statute or common law, even when the patient commits an intentional intervening act. *See White*, 975 S.W.2d at 530–31 (in psychiatric negligence case of patient who committed suicide, holding that "[t]he fact that the deceased was not insane or bereft of reason" did not preclude tort claim, and that a psychiatrist's liability "may not be reduced by comparing his negligent conduct with the decedent's intentional act of committing suicide since the intentional act was a foreseeable risk created by the defendant's negligence"). Therefore, a criminal finding that Gardner committed an intentional crime, or that he was not insane, does not preclude a claim of psychiatric malpractice under Tennessee law.

22

A finding that a patient intentionally committed an intervening act also does not preclude a finding of proximate causation in this situation, because under Tennessee law "[a]n intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991), *but see White*, 975 S.W.2d at 530 (stating that an intentional act "may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice," but reserving determination for a jury).

For these reasons, even if the government can show that Gardner actually litigated the issue of his volition, sanity, or intent in the criminal case, the resolution of that issue is not implicated in Gardner's civil claims of medical negligence. Because a finding of general intent to commit a criminal act does not preclude a finding of psychiatric negligence under Tennessee law, the issues decided in Gardner's criminal case are not identical to those raised in his civil suit, and the doctrine of collateral estoppel cannot be properly applied.

## II. Failure to State a Claim

### A. Pleading Requirements

We review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) *de novo*, "pursuant to the same standards that should have been applied in the district court." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to

23

judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

Because Gardner brought his claim under the Federal Tort Claims Act, 28 U.S.C. § 2674, his pleadings are governed by Federal Rule of Civil Procedure 8, which requires Gardner's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).

### B. Analysis

In his complaint, Gardner alleged that Department of Veterans Affairs employee, pharmacist Vicki Bianchi, negligently treated Gardner by,

> failing to timely diagnose, manage and treat Michael Gardner for his depression and mental instability, which resulted in pain and suffering, emotional distress, permanent impairment, suicidal thoughts, impaired memory, a major depressive disorder, acute stress disorder and disassociative amnesia. As a direct and proximate result of the above negligent acts, negligent omissions, negligent medical treatment and/or medical malpractice by the Defendant's, agents, employees and/or servants, Plaintiff Michael Gardner suffered a complete mental breakdown causing him to be charged with aggravated assault and sentenced to federal incarceration for eight (8) years.
> . . .

24

> Plaintiff Michael Gardner's impaired mental condition was the proximate result of the negligence of the United States, through its employee(s) in failing to treat him for his emotional and mental disorders in accordance with the recognized standards of professional practice.

(R. 37: Am. Compl. at 2–3.)

As outlined above, the statutory tort for failure to warn requires a showing that (1) the patient communicated an actual threat against an identifiable victim, (2) the mental health professional reasonably determined, or should have determined, that the patient could, and likely would, carry out the threat absent intervention, and (3) the mental health professional did not take reasonable care to predict, warn of, or take precautions to protect the victim. *See* Tenn. Code Ann. § 33-3-206 (West 2010). The claim further requires that the defendant be a "qualified mental health professional," which is limited by statute to a psychiatrist, physician with expertise in psychiatry, psychologist, psychological examiner, social worker with mental health experience, psychiatric nurse, or professional therapist or counselor. *See* Tenn. Code Ann. § 33-1-101(20) (West 2010).

Gardner does not allege any of the elements of a failure to warn claim. He does not claim that he ever made a threat in the presence of a mental health professional, that the professional ever assessed (or failed to assess) the threat for plausibility, or that the professional failed to take reasonable care to protect the victim, which in this case, Gardner claims was himself. Furthermore, Gardner brings his claim against a pharmacist, Vicki Bianchi. In doing so, he fails to plead that, or in what manner, Bianchi qualifies as a mental health professional under the statute, or how a pharmacist could fail (or succeed) in "providing medical and psychiatric care," (R. 37: Am. Compl. at 2), having never been required to obtain a medical degree or medical license.

25

Gardner has also failed to provide a plausible pleading regarding the common law psychiatric negligence tort. As above, the tort requires a showing of "[1] a duty of care owed by the defendant to the plaintiff; [2] conduct falling below the applicable standard of care that amounts to a breach of that duty; [3] an injury or loss; [4] cause in fact; and [5] proximate cause." *McClung*, 937 S.W.2d at 894.

Gardner has not pled that a duty of care to prevent his crime was owed to him by the pharmacist at the VA hospital, or that the care provided by the pharmacist fell below the level required by that duty. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993) (describing limitations on duty by stating that an actor "is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty") (quoting Harper & Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 887 (1934)). While Gardner has pled an injury—"federal incarceration for eight (8) years . . . pain, suffering, mental anguish, loss of enjoyment of life, loss of earning capacity, and loss of liberty," (R. 37: Am. Compl. at 2–3)—he has failed to plead facts sufficient to show that Defendants were either the actual or proximate cause of that injury.

Gardner does make the conclusory statement that his criminal actions were "a direct and proximate result of the above negligent acts, negligent omissions, negligent medical treatment and/or medical malpractice by the Defendant's," (*Id.* at 2), but pleads no facts to support this conclusion. Gardner does not plead, for instance, facts that constitute the acts, omissions, or negligent medical treatment that he alleges. Nor does he plead facts to support the claim that his "mental breakdown," as he describes it, post-dated the alleged negligence or would have been cured or contained by proper

26

pharmaceutical treatment. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. In this case, Gardner provides no such factual allegations.

Though Gardner pleads proximate cause, stating that his "impaired mental condition was the proximate result of the negligence of the United States, through its employee(s) in failing to treat him for his emotional and mental disorders in accordance with the recognized standards of professional practice," (R. 37: Am. Compl. at 3), Gardner also fails to show plausibility on this element. "As [Tennessee state] cases dealing with proximate or legal causation have indicated, the crucial inquiry is whether the defendant's negligent conduct led to or made [the injury or harm] reasonably foreseeable." *White*, 975 S.W.2d at 530. In addition to the foregoing reasons, because Gardner has not pleaded that his actions and the harms claimed—shooting co-workers in his workplace, pleading guilty to the crime, and being incarcerated—should have been reasonably foreseeable to his pharmacist based on her actions, he falls short in pleading this element of the tort.

On the whole, the basis of Gardner's tort claim it is startlingly unclear.[2] And while "the pleading standard Rule 8 announces does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted). Gardner has not met this standard in his pleading, and I believe that we should affirm the decision of the district court on this basis.

---

[2]Though it is noted that Gardner appears to have filed an administrative claim with the Department of Veteran's Affairs, he neglected to append that claim, or any exhibits included therein, to this complaint before the district court. (R. 37-1.) Therefore, we have only his pleadings to consider in reaching a determination.