**Jill CRANE, Plaintiff–Appellant,**

v.

**MARY FREE BED REHABIL-ITATION HOSPITAL, Defendant–Appellee.**

No. 15–1358.

United States Court of Appeals, Sixth Circuit.

Dec. 11, 2015.

BEFORE: GIBBONS and McKEAGUE, Circuit Judges; ANDERSON, District Judge.*

S. THOMAS ANDERSON, District Judge.

Jill Crane brought employment discrimination and retaliation claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and parallel discrimination and retaliation claims under Michigan's Elliot–Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201, against her employer Mary Free Bed Rehabilitation Hospital ("Mary Free Bed").[1] The district court granted Mary Free Bed's motion for summary judgment, and Crane appeals that decision.

For the reasons set forth below, we **AFFIRM** the decision of the district court.

## I.

Mary Free Bed provides acute care rehabilitation for patients with brain and spi-

---

* The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

1. Crane agreed to the dismissal of her claim brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and her state law claim of intentional infliction of emotional distress by the district court.

nal injuries. Crane, who is African–American, was employed by Mary Free Bed as a part-time nursing supervisor beginning in 2008. On either December 3 or 4, 2010, another nursing supervisor allegedly told Crane that a Caucasian patient's family had requested that no African–American caregivers provide care for the patient. Crane complained to Connie Brown–Olds, the Director of Nursing, about the request. Crane worked one more shift during the remaining seven days of the patient's stay.

Crane claims that Mary Free Bed's action in enforcing the race-based caregiver request constituted racial discrimination. Mary Free Bed denies that it honored the request.[2] However, Mary Free Bed contends that even if the request had been honored, no aspect of Crane's employment changed in any way because of the request. She had the same work hours, responsibilities, duties, status, pay, and benefits after she heard of the request as she did before and, thus, suffered no adverse action. Furthermore, as a supervisor, Crane was not responsible for direct patient care, and Mary Free Bed reasons that any such policy would, therefore, have not affected her.

In August 2012, Crane applied for a newly-created Director of Education position at Mary Free Bed. The job was awarded to another candidate who is Caucasian. Mary Free Bed contends that the successful candidate's qualifications were objectively superior to Crane's qualifications, while Crane contends that she was denied the position because of her race and in retaliation for engaging in certain protected activities.

On appeal, Crane argues that the district court erred in granting Mary Free Bed's motion for summary judgment based on its determinations that: (1) Crane was not subjected to an adverse employment action even if Mary Free Bed did honor the caregiver request; (2) Crane could not establish that she was denied the Director of Education position for discriminatory reasons because her qualifications were not similar to those of the successful candidate; and (3) Crane could not show that she was retaliated against because there was no evidence of a causal connection between her protected activities and the selection of a different candidate for the Director of Education position.

## II.

We review de novo the grant of summary judgment by a district court. *See Dodd v. Donahoe,* 715 F.3d 151, 155 (6th Cir.2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.,* 477 U.S.

**2.** Although Mary Free Bed contends that there is a disputed issue of fact as to whether it has a policy of honoring race-based care requests, the district court determined that Mary Free Bed honored the request. Because in deciding a motion for summary judgment the court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), this Court accepts the district court's determination that there was such a policy.

242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A.

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for both race-based employment discrimination and retaliation. 42 U.S.C. § 1981; *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir.2001). Similarly, the ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race." Mich. Comp. Laws § 37.2202(1)(a).

Claims under these two statutes are analyzed under the framework developed for claims brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, thus, the same burden of proof and elements of a prima facie case apply. *See In re Rodriguez*, 487 F.3d 1001, 1008 n. 2 (6th Cir. 2007) (citing *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515, 520–21 (2001) (applying the Title VII burden-shifting model to ELCRA claims)); *see also Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 720 (6th Cir.2004) (explaining that the elements of a prima facie case and the burden of proof are the same for claims arising under Title VII and § 1981).

"To show employment discrimination, the plaintiff must present either direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory intent." *Ross v. Pfizer,*

*Inc.*, 375 F. App'x. 450, 453 (6th Cir.2010). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003) (explaining that "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.") "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir.2000).

A discrimination case relying on circumstantial evidence is analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[3] To establish a prima facie case for race discrimination under § 1981, a plaintiff must show that "(1) [s]he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir.2006). Under the EL-

---

**3.** The district court did not reach the final stages of the burden shifting standard on any of Crane's claims because it concluded that Crane had failed to establish a prima facie case on those claims. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089 (Upon making a prima facie showing of discrimination, the burden shifts to the defendant to show a non-discriminatory reason for its employment decision; if the defendant satisfies its burden, the plaintiff must then show by a preponderance of the evidence that the proffered reason is untrue, and in fact, a pretext for illegal discrimination.).

CRA, a plaintiff may prove disparate treatment by showing that she was a member of a protected class and that she was treated differently than members of a different class for the same or similar conduct. *Reisman v. Regents of Wayne State Univ.*, 188 Mich.App. 526, 538, 470 N.W.2d 678, 685 (1991).

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir.2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). "[A] plaintiff in a race discrimination action 'has the burden of proving by a preponderance of the evidence a prima facie case.'" *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir.2000) (quoting *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089). The key question is always whether the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

A plaintiff alleging discrimination with direct evidence is not subject to the *McDonnell Douglas* framework, although "she still must establish that she suffered an adverse employment action in order to state a claim." *Vredevelt v. GEO Group, Inc.*, 145 Fed.Appx. 122, 128 (6th Cir.2005). Accordingly, regardless of whether Crane proceeds on the basis of direct evidence or circumstantial evidence, she must demonstrate that she suffered an adverse employment action as a result of the alleged discrimination.

Crane contends that she has presented both direct and indirect evidence of racial discrimination. She argues that the mere fact that assignments were made by Mary Free Bed on the basis of race, regardless of the impact on her personally, violated her rights under § 1981 and the ELCRA. She also contends that, as a supervisor, she was responsible for all the patients on her shift and denying her the right to care for a particular patient as needed was discriminatory even if she did not in fact have to care for that patient.

Not every action taken by an employer that potentially affects an employee rises to the level of an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 796–97 (6th Cir.2004). Instead, a plaintiff must point to a materially adverse change in the terms or conditions of her employment. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). Examples of a materially adverse change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices that might be unique to a particular situation." *Id.* at 886. At a minimum, the change in employment conditions must be more than an inconvenience or an alteration of job responsibilities. *Id.*

■ Here, the district court found that an adverse employment action may be based on an employer's race-based assignment of duties even without a change in pay, benefits, prestige, or responsibilities. However, there was no adverse employment action in this case because, according to the district court, any impact on Crane was *de minimis* and temporary. In reaching this decision, the district court looked at the following facts: Crane worked only one more shift after learning of the request; she had no assigned responsibility to care for the patient who was the subject of the request; she was not required to reassign any nurses because of the re-

quest; she was not personally reassigned because of the request; and her own work was not significantly impacted.[4]

The district court's determination that an adverse employment action must be more than *de minimis* is in line with other cases from this Court. An adverse employment action is "a materially adverse change in the terms and conditions of [the plaintiff's] employment," *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir.1999), and generally involves material changes in employment status such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

As this Court stated in *Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir.2000):

The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *See, e.g., Jacklyn v. Schering–Plough Healthcare Prod.*, 176 F.3d 921, 930 (6th Cir.1999) (holding that "neither requiring plaintiff to work at home while she was recovering from outpatient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir.1999) (holding that police chief's suspension

with pay was not an adverse employment action); *Hollins*, 188 F.3d at 662 (6th Cir.1999) (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); *Kocsis v. Multi–Care Management*, 97 F.3d 876, 885 (6th Cir.1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

*Bowman*, 220 F.3d at 462. We further explained:

Similar to cases where the employment action is not significant enough to rise to the level of a materially adverse employment action, cases where the employment action, while perhaps being materially adverse if permanent, is very temporary also do not constitute materially adverse employment actions. This principle was recognized in *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178 (6th Cir.1992), where the court indicated that even if a tangible job detriment has been suffered, there may be a *de minimis* exception for temporary actions or where further remedial action is moot and no economic loss occurred. *See id.* at 187. *See also Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987) (holding that there was no adverse em-

---

4. Crane cites three out-of-circuit cases in support of her argument that being told that she could not care for a particular patient because of her race violated her civil rights: *Chaney v. Plainfield*, 612 F.3d 908 (7th Cir. 2010); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468 (11th Cir.1999); and *Patterson v. UPMC South Hills Health System Home Health, L.P.*, No. 03–89, 2005 WL 6720844 (W.D.Pa. May 15, 2005). All three cases involved African–American employees who were reassigned by their employer based on a customer or pa-

tient's preference. However, as noted by the district court, the *Ferrill* and *Chaney* employees endured race-based work assignments throughout their employment instead of the two eight-hour shifts that Crane worked, *Ferrill*, 168 F.3d at 471; *Chaney*, 612 F.3d at 910, and the *Patterson* and *Ferrill* employees were personally reassigned because of their race in contrast to Crane, who had no direct care responsibilities for the patient. *Patterson*, 2005 WL 6720844, at *2–3; *Ferrill*, 168 F.3d at 471.

ployment action where temporary transfer did not result in loss of salary or benefits).

*Id.* ("Even if we assume that the [ten day] loss of the Coordinator position constitutes a significant change in employment status, there is no tangible employment action in this case because the very temporary nature of the employment action in question makes it a non-materially adverse employment action.").

Likewise, Crane suffered no material change in the terms or conditions of her employment as a result of the alleged race-based request. It is undisputed that her work hours, duties, compensation, and benefits did not change in any way and that, after she learned of the request, she worked only one more shift. Any potential exclusion from the patient's room was not a removal of responsibilities because Crane was not responsible for direct patient care. Because Crane has not shown a materially adverse effect on her job, she cannot establish a claim of discrimination based on the race-based assignment.

## B.

With regard to Crane's claim that she was denied the Director of Education job because of her race, the district court found that Crane could not establish a prima facie case of discrimination because her qualifications for the job were not similar to those of the successful candidate, Bonita Pawloski. Crane has no direct evidence of race discrimination in connection with the decision to select Pawloski for the Director of Education position. Therefore, Crane must prove her claim

with circumstantial evidence under the *McDonnell Douglas* framework.

To establish a prima facie case of discrimination for her failure to promote claim, Crane must show that: (1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was considered for and denied the position despite her qualifications; and (4) an individual of similar qualifications who was not a member of the protected class received the promotion.[5] *White v. Columbus Metro. Hous. Auth.,* 429 F.3d 232, 240 (6th Cir.2005); *see also White v. Baxter Healthcare Corp.,* 533 F.3d 381, 391 (6th Cir.2008) ("Absent direct evidence of discrimination, claims brought pursuant to Title VII's antidiscrimination provision, § 1981, and the Elliot–Larsen Act are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)."); *Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir.1999) ("We review claims of alleged race discrimination brought under § 1981 and the Elliot–Larsen Act under the same standards as claims of race discrimination brought under Title VII.").

■ The district court granted Mary Free Bed's motion for summary judgment on this claim because it determined that Crane could not meet the fourth prong of *McDonnell Douglas,* i.e., that she and Pawloski had similar qualifications. In reaching its decision, the court looked at a

---

**5.** The fourth prong of a prima facie case for claims under the ELCRA has been construed as requiring a plaintiff to show that she was rejected under circumstances giving rise to an inference of unlawful discrimination. *See, e.g., Sniecinski v. Blue Cross & Blue Shield of*

*Mich.,* 469 Mich. 124, 134, 666 N.W.2d 186, 193 (2005) (reiterating elements of a prima facie case under the ELCRA). Crane has not asserted that any "other circumstances" give rise to an inference of race discrimination.

chart made by Francie Dietrich, the decision-maker, comparing each candidate to the requirements of the position. The chart showed that Pawloski's qualifications were superior to Crane's in numerous categories, including experience in educational program development; experience with multidisciplinary professionals; experience in technology; verbal communication; experience developing and coordinating continuing education; evaluation of educational programs; experience with customer service; and experience with educational affiliations and/or accreditation.

Additionally, Pawloski was responsible for developing the radiology studies program at a state university. She created the program's curriculum and was involved in the program's budgeting process, academic advising, discipline, grievances, and continuing education. Crane's education experience consisted of teaching clinical nursing courses and supervising clinical rotations. She was responsible for developing course material and assessing the course needs of one class, but Crane could not recall whether she gave this information to Dietrich during her interview.

Pawloski had worked with professionals across a variety of disciplines developing education programs. Crane's experience working with multidisciplinary team members was as a registered nurse, not as an educator. Pawloski also had experience incorporating technology into education programs, coordinating conferences, developing competencies, evaluating education programs and preceptors (i.e., instructors), negotiating clinical affiliation agreements, and achieving accreditation for an education program. Crane had minimal experience in these areas.

Crane admits that Dietrich told her during the interview that Pawloski was more qualified, and she does not dispute Dietrich's assessment of her own qualifications and experience in comparison to Pawloski's. Despite this, Crane claims that Pawloski is not qualified for the position because the job posting listed as an essential qualification a Master's degree in Nursing, a Master's degree in Healthcare Education, or a Master's degree in Healthcare Management. Crane has a Master's degree in Nursing while Pawloski has a Master's degree in Education. However, Dietrich, the author of the job posting, testified that the Master's degree requirement would be fulfilled by a Master's degree in Education, even if it was not in Healthcare Education.

Crane contends that, because she met the minimum qualifications for the position as far as knowledge, education, and training requirements, she and Pawloski were similar in all relevant aspects. She argues that the final prong of the prima facie case is met in a failure to promote case when the plaintiff can demonstrate that she and the other candidate had experience or qualifications which made them both viable candidates. Crane's argument is without merit.

Although Crane correctly points out that "similarly situated does not mean identical" and that, instead, the plaintiff must merely show that she was "similar in all of the *relevant* aspects," *Braithwaite v. Dep't of Homeland Sec.*, 473 Fed.Appx. 405, 410 (6th Cir.2012), a court must "conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of her prima facie burden." *White*, 429 F.3d at 243 ("Some comparison between Walker and White is therefore necessary in considering the fourth prong of the prima facie case."). Candidates do not have similar qualifications when one candidate has objectively "superior experi-

ence in material and relevant respects" of attributes associated with the position sought. *Id.* at 244.

Crane's qualifications were not similar to Pawloski's, and, therefore, Crane has not satisfied the fourth prong of her prima facie burden. Although Crane had experience training nursing students, the Director of Education position required more than that. The successful candidate was required to develop and implement multidimensional educational programs for the staff at Mary Free Bed and its network partner organizations which included all healthcare professions, not just nursing. Pawloski had developed and led a variety of medical education programs, including a medical education program at a local university and a large medical conference. Crane had no similar qualifications or experience. Because Pawloski had objectively "superior experience in material and relevant respects" of the qualifications needed for the position, Crane cannot establish a prima facie case of discrimination in her failure to promote claim.

### C.

Crane claims that she was not chosen for the Director of Education position in retaliation for her objection to the alleged race-based caregiver request and her assistance in helping an African–American co-worker file an internal grievance. She does not claim to have direct evidence of retaliation. Therefore, she must attempt to prove her claim with circumstantial evidence under *McDonnell Douglas.*

To establish a prima facie case of retaliation, Crane must show that: (1) she engaged in a protected activity, (2) Mary Free Bed knew of her protected activity, (3) it took an employment action adverse to her, and (4) there was a causal connection between the protected activity and the adverse employment action. *Mulhall v.*

*Ashcroft,* 287 F.3d 543, 551 (6th Cir.2002). The ELCRA requires a showing that the plaintiff's protected activity was a significant factor in the employer's adverse action. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 527 (6th Cir.2008). To show that her activity was a significant factor, a "plaintiff must present evidence sufficient to raise the inference that [her] protected activity was the likely reason for the adverse action," *id.* at 527–28 (citing *In re Rodriguez,* 487 F.3d at 1011), "not just that there was a causal link between the two." *Barrett v. Kirtland Cmty. Coll.,* 245 Mich.App. 306, 315, 628 N.W.2d 63, 70 (2001).

The district court found that Crane could not show that Francie Dietrich, the decision-maker, knew of the alleged protected activity and she could not establish a causal connection between her protected activity and the decision not to award her the Director of Education position. Accordingly, Crane could not establish a prima facie case of retaliation, and Mary Free Bed was entitled to summary judgment on the retaliation claim.

Crane has presented no non-speculative evidence that Dietrich knew about her protected activity before she decided to hire Pawloski. In contrast, Dietrich testified that she had no knowledge of Crane's objections to the alleged race-based request or Crane's assistance with the grievance filed by Crane's co-worker. An employment decision cannot be caused by protected activity if the decision-maker did not know about the protected activity. *See Mulhall,* 287 F.3d at 554 (affirming summary judgment on retaliation claim because the plaintiff failed to produce evidence showing that the decision-makers knew of the plaintiff's protected activity). In this case, the undisputed evidence shows that Dietrich did not know of Crane's protected activity.

Crane claims that Connie Brown–Olds, Director of Nursing, and Bruce Brasser, Brown–Olds' supervisor, showed retaliatory animus toward her and reasons that they must have influenced Dietrich's decision, even though there is no evidence that Dietrich communicated with either Brown–Olds or Brasser about Crane's application for the position. The only evidence that Crane points to in support of her argument is that she saw Brown–Olds speaking with Dietrich shortly before Dietrich interviewed Crane. However, Dietrich testified that Brown–Olds had no input into the selection of the Director of Education, and there is no evidence in the record that Brasser influenced Dietrich's selection of Pawloski over Crane.

Crane contends that she has established the second prong of her prima facie case by showing that Dietrich was influenced by Brown–Olds and Brasser under a "cat's paw" theory of liability. Under this theory, "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011); *see also Bobo v. United Parcel Service*, 665 F.3d 741, 755 (6th Cir.2012) (quoting *Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 586 n. 5 (6th Cir. 2009)) (explaining that the "cat's paw" theory of liability "refers to a situation in which a biased subordinate, who lacks decision-making power, influences the unbiased decisionmaker to make an adverse [employment] decision, thereby hiding the subordinate's discriminatory intent"). To prevail under this theory, Crane must show that by relying on a "discriminatory information flow [Dietrich] acted as the conduit of [Brown–Olds and Brasser's] prejudice—[their] cat's paw." *Madden v.*

*Chattanooga City Wide Service Dep't.*, 549 F.3d 666, 678 (6th Cir.2008) (internal quotation marks omitted). The alleged racial animus of Brown–Olds and Brasser can be imputed to Dietrich if Crane can show that (1) Brown–Olds and Brasser "intended to cause an adverse employment action" and (2) their action was "a proximate cause of the ultimate employment action." *Staub*, 562 U.S. at 422, 131 S.Ct. 1186.

As noted above, there is no evidence in the record to support an inference that either Brown–Olds or Brasser influenced Dietrich's decision. Even if Brown–Olds spoke with Dietrich shortly before Crane's interview, there is no evidence that they were speaking about Crane or her application for the position. Dietrich denied that she spoke with Brown–Olds about Crane. Dietrich also denied that she had any knowledge of Crane's protected activity. As for Brasser, there is no evidence of any communication between him and Dietrich. Crane cannot establish a "cat's paw" theory of liability for unlawful retaliation based on her unsupported suspicions about Brown–Olds and Brasser.

█ As for the fourth prong of Crane's retaliation claim—causation—temporal proximity between the protected activity and the adverse employment action may be sufficient to establish a causal connection for establishing a prima facie case in certain circumstances. *Mickey*, 516 F.3d at 523.

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the

subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Id.* at 525.

Here, the passage of time between Crane's protected activities and Dietrich's decision-twenty-two months and seven months [6]—and the promotion decision is not "very close" in time and without more cannot sustain an inference of a causal connection. *See Hafford v. Seidner,* 183 F.3d 506, 515 (6th Cir.1999) (finding that, because the alleged adverse employment action occurred two to five months after the protected activity, the "loose temporal proximity" is "insufficient to create a triable issue"); *see also Cooper v. City of N. Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986) (finding that four months between the protected activity and adverse action was insufficient to support an inference of retaliation).

Crane does not suggest that timing alone is sufficient to establish the last element of her prima facie case of retaliation. Instead, she argues that the timing coupled with other evidence creates a factual dispute as to whether there is a causal connection between her protected activity and her failure to be promoted. As "other evidence," Crane points to Brown–Olds' alleged involvement in the hiring process for the Director of Education position. However, it is undisputed that Dietrich made the hiring decision. She also points to the conversation between Brown–Olds and Dietrich immediately prior to her interview. As discussed above, there is no evidence Crane was discussed during that conversation. Because there is no evidence of a causal connection between Crane's protected activity and the selec-

tion of a different candidate, Crane cannot establish a retaliation claim.

## III.

For the above reasons, we affirm the judgment of the district court.

---

**6.** Dietrich selected Pawloski to become the Director of Education in October 2012–twenty–two months after Crane's objection to the

race-based request in December 2010, and seven months after the co-worker filed her grievance in March 2012.