NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0067n.06

Case No. 21-1481

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 07, 2022
DEBORAH S. HUNT, Clerk

STACI RUSSELL,                       )
                                     )
        Plaintiff - Appellant,       )
                                     )
v.                                   )     ON APPEAL FROM THE UNITED
                                     )     STATES DISTRICT COURT FOR THE
THREE PILLARS,                       )     EASTERN DISTRICT OF MICHIGAN
                                     )
        Defendant - Appellee.        )
                                     )

BEFORE:  GIBBONS, READLER, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  After serving as Academic Dean for Cornerstone Health High School for more than three years, Staci Russell was moved to Dean of Students, a position she previously occupied.  Soon thereafter, the principal position became vacant.  Russell did not apply or indicate interest in the position, and Three Pillars, Inc. d/b/a Cornerstone Education Group ("Cornerstone") selected a male to fill the position temporarily. Russell sued under Title VII and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), alleging that Cornerstone discriminated against her on the basis of sex when it demoted her and failed to promote her.  The district court granted summary judgment to Cornerstone.  We affirm.

**I**

Cornerstone, a Michigan charter school management company, operates five public academies in the state.  On July 30, 2012, Russell started her employment as a Course Manager at Cornerstone Health High School ("the high school" or "the school").  Russell later served as Dean

of Students and, temporarily, interim principal before she was named Academic Dean on July 13, 2016. Scott Humphrey, a male, was hired as the school's other Academic Dean in July 2016.

On July 1, 2019, Grand Valley State University, the authorizing entity for the high school, "award[ed] only a three-year charter contract because of [the school's] weaker-than-desired performance." DE 30-2, Kimball Dep., Page ID 977. The high school "was identified as one of the weaker schools within GVSU's charter portfolio." *Id.* Cornerstone subsequently hired Lisa Key as Chief Academic Officer to oversee educational programs. Jared Davis, then-principal of the high school and direct supervisor of Russell and Humphrey, reported directly to Key. Key believed "the high school did not have the optimum leadership that it needed" and insisted leadership should spend eighty percent of their time on "instructional leadership" and twenty percent of their time on "management." DE 28-5, Key Dep., Page ID 519, 521–22, 528. In August, Key observed that Russell spent more time on management tasks instead of her Academic Dean responsibilities. Key had conversations with Davis about her concerns that Russell "was not doing an academic dean job" and, as a result, "the school was not getting the support that they needed." *Id.* at 529.

On November 23, 2019, Key sent an email to members of Cornerstone's executive leadership team indicating a "need to . . . move forward with leadership changes to improve outcomes" at the high school. DE 28-10, Key Email, Page ID 598. She wrote that she "discovered early on . . . that the [high school] lacks the proper leadership as well as academic and instructional support it requires to be successful." *Id.* Key intended to move Russell to Dean of Students "to assist with student behavior and culture," which she hoped "would be a better fit for [Russell's] skills and/or . . . would improve her performance." *Id.* Asserting that "instructional leadership is not where [Russell]'s skill set is," Key said she "can't afford to not support the teachers and

students as we work to improve student progress and achievement." *Id.* Key indicated that moving Russell to Dean of Students was "step one of [her] plans." *Id.* On November 26, 2019, Russell was advised of Cornerstone's decision to move her to Dean of Students. Her compensation and benefits did not change. Russell officially accepted the position on December 3, 2019 and started the position on December 9, 2019.

On December 6, 2019, Cornerstone fired Davis and named Phillip Price, already principal at Cornerstone's Lincoln-King High School, interim principal. After Price decided he no longer wished to serve as principal of two schools, Humphrey, who had indicated his desire to become principal, began serving as interim principal on December 16, 2019. Cornerstone posted the principal position that same day. Russell did not apply or indicate interest. Humphrey applied and interviewed for the position but was not selected. On January 24, 2020, Cornerstone announced it was combining Cornerstone Health High School and Lincoln-King High School and that Price would be principal of the combined school. Ernestine Sanders was selected to serve as interim principal of Cornerstone Health High School until the end of the 2019 to 2020 school year.

Russell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 7, 2020. She alleged she was discriminated against on the basis of race[1] and sex "[o]n December 9, 2019," when she "was demoted to Dean of Students." DE 28-17, EEOC Charge, Page ID 622. The EEOC closed its file and issued a "Notice of Right to Sue." Russell sued under Title VII and Michigan's ELCRA, alleging she was discriminated against on the basis of sex when she was demoted and denied promotion to principal. The district court granted summary judgment to Cornerstone and dismissed Russell's claims. Russell timely appealed.

---

[1] Although Russell indicated discrimination on the basis of race in her EEOC charge, she did not file a race discrimination claim in the district court.

**II**

We review a district court's grant of summary judgment de novo. *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences are "consider[ed] . . . in the light most favorable to the nonmovant." *City of Wyandotte*, 262 F.3d at 585. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**III**

Russell argues Cornerstone discriminated against her on the basis of sex in demoting her to Dean of Students and in failing to promote her to principal in violation of Title VII and the ELCRA. Russell does not present direct evidence of discrimination. Absent direct evidence of discrimination, sex discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). First, Russell has the burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252–53. If Russell makes a prima facie case, "the burden shifts" to Cornerstone "to articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). If Cornerstone meets that burden, Russell must prove Cornerstone's offered reason was pretextual and not the true reason for the action. *Id.*

Russell has "the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. Russell's ELCRA claims are analyzed using the same evidentiary and burden-shifting framework as her Title VII claims. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

## A

The district court found Russell established a prima facie case of sex discrimination on her demotion claim, and Cornerstone had a legitimate, non-discriminatory reason for the demotion that Russell could not prove was pretextual. We assume, without deciding, that Russell established a prima facie case of sex discrimination on her demotion claim. Cornerstone thus has the burden to provide a "legitimate, non-discriminatory reason for the adverse employment action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Cornerstone's "explanation of its legitimate reasons must be clear and reasonably specific" and supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was not] motivated by discriminatory animus." *Burdine*, 450 U.S. at 257–58.

Cornerstone asserts Russell was moved to Dean of Students due to poor performance. Grand Valley State University had awarded Cornerstone "only a three-year charter contract because of its weaker-than-desired performance." DE 30-2, Kimball Dep., Page ID 977. Key believed the school "lack[ed] the proper leadership as well as academic and instructional support it require[d] to be successful" and needed "leadership changes to improve outcomes." DE 28-10, Key Email, Page ID 598. Moving Russell to Dean of Students was "step one" of Key's "plans of improvement." *Id.* Key determined Russell did not have strengths in instructional leadership, which was essential for an Academic Dean. She discovered Russell spent more than twenty percent of her time on management tasks, such as "spending time on schedules, enrolling students,

management duties, [and] subbing." DE 28-5, Key Dep., Page ID 521–22, 539. Key saw no evidence Russell "was doing those things that she was supposed to do at the capacity she was supposed to do them." *Id.* at 528.

Poor performance is a legitimate, non-discriminatory reason for an adverse employment decision. *See Stransberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011). Cornerstone's proffered reasons are "clear and reasonably specific" and could lead a jury to rationally find that moving Russell to Dean of Students was "not . . . motivated by discriminatory animus." *Burdine*, 450 U.S. at 257–58. We find Cornerstone has met its burden to articulate a legitimate, non-discriminatory reason for its employment decision.

Russell now has the burden of proving that Cornerstone's "proffered reason was not its true reason, but merely a pretext for discrimination." *Baxter Healthcare*, 533 F.3d at 391–92. Russell can "succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Pretext is indirectly demonstrated "by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Baxter Healthcare*, 533 F.3d at 393. It can also be demonstrated by "evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)).

Russell disputes that her performance was poor, particularly because issues concerning her performance were not brought to her attention before she was moved to Dean of Students and because the management tasks for which Key criticized her were performed at the direction of her

supervisor. Russell's view of her own performance, however, does not establish pretext if Cornerstone "reasonably relied on the particularized facts then before it." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998); *see also Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 345 (6th Cir. 2006). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807. Further, Russell's disagreement with Cornerstone's "honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [Cornerstone] had a reasonable basis to be dissatisfied." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001).

After missing this court's already-extended deadline to correctly file a reply brief, Russell moved for leave to file a reply brief on December 3, 2021, citing clerical error, and attached a proposed reply brief. Cornerstone filed a response in opposition, arguing Russell did not establish good cause under Federal Rule of Appellate Procedure 26(b) and that permitting the proposed reply brief would wrongfully expand the record on appeal. Regardless of whether Russell established good cause, Cornerstone is correct that Russell seeks to wrongfully expand the record on appeal. Russell includes a screenshot of a November 24, 2019 email sent by Frey-Greathouse and a November 25, 2019 email sent by Russell, and argues the emails establish pretext. Neither email was introduced into evidence or filed with the district court, so we cannot consider them. We deny Russell's motion for leave to file a reply brief.

Russell presents no evidence from which the jury could reasonably find that Cornerstone's proffered reason was not based in fact, was not the actual reason, or was insufficient to explain its employment decision. *See Baxter Healthcare*, 533 F.3d at 393. Russell's arguments do not cast doubt on the reasonableness of Cornerstone's decision or prove "she has been the victim of

intentional discrimination." *Burdine*, 450 U.S. at 256. She has not established that Cornerstone offered "a false explanation" for its decision. *Stansberry*, 651 F.3d at 488. Cornerstone "made a reasonably informed and considered decision" before moving Russell to Dean of Students. *Smith*, 155 F.3d at 807. We find Russell did not establish Cornerstone's proffered reason for her demotion was pretextual.

**B**

The district court found that Russell failed to exhaust her administrative remedies as required under Title VII because she did not present her failure to promote claim to the EEOC. Parties alleging violations of Title VII must first exhaust administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006). A party's EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Russell cannot bring a claim in her lawsuit that she did not include in her EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Her pro se complaint must be "liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph*, 453 F.3d at 732 (quotation marks and citation omitted).

Russell filed her EEOC charge on January 7, 2020. She listed December 9, 2019, as the earliest and latest date(s) discrimination took place and did not mark the box to indicate the discrimination was a continuing action. She alleged:

> On December 9, 2019, I was demoted to Dean of Students. A white male, who was also an Academic Dean was promoted to Interim Principal. The two positions of Academic Dean are currently being advertised. I was not given an explanation of why I was demoted.
>
> I believe I was demoted, and discriminated against, because of my Sex-Female.

DE 28-17, EEOC Charge, Page ID 622.

Russell mentioned her alleged demotion three times in her charge but did not include any facts related to her allegation that Cornerstone discriminated against her by failing to promote her to principal. Her listed date of discrimination does not encompass her failure to promote claim, as none of the relevant promotion events occurred on December 9, 2019—Davis was fired and Price was named interim principal on December 6, 2019, and Humphrey was selected as interim principal on December 16, 2019.

As the district court found, "Russell's failure to promote claim is not one reasonably expected to grow out of her EEOC charge, which is *limited to a single employment action*—i.e., her alleged demotion to Dean of Students—*that occurred on a single day*." DE 33, Order, Page ID 1156–57 (emphases added). The facts included with respect to Russell's charged demotion claim would not "prompt the EEOC to investigate" the different, uncharged failure to promote claim. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). The facts are not "sufficiently precise . . . to describe generally the action . . . complained of"—here, Cornerstone's failure to promote her to principal. 29 C.F.R. § 1601.12(b). Russell thus did not exhaust her administrative remedies for her Title VII failure to promote claim.

## C

The district court found that Russell did not establish a prima facie case on her ELCRA failure to promote claim because she did not apply for the vacant principal position. Unlike Title VII, the ELCRA does not require exhaustion of administrative remedies. *See* M.C.L. § 37.2202. The ELCRA prohibits an employer from "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." M.C.L. § 37.2202(1)(a).

As noted, ELCRA claims are subject to the same burden-shifting framework as Title VII claims. *Humenny*, 390 F.3d at 906.

To establish a prima facie case for her failure to promote claim, Russell must show: "(1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was considered for and denied the position despite her qualifications; and (4) an individual of similar qualifications who was not a member of the protected class received the promotion." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 524 (6th Cir. 2015).

Russell concedes she did not apply for the vacant principal position. If a plaintiff fails to apply for the position at issue, there are two situations where her discrimination claim can still succeed: (1) when the employer's history of "gross and pervasive discrimination" creates an "atmosphere of futility" and (2) when "the employer promotes employees into the position[] in question without asking for applications or posting the opening so that employees could apply for the position[]." *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145–46 (6th Cir. 1989) (citation omitted); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68 (1977).

Russell argues her demotion to the Dean of Students position created an atmosphere of futility, but that event alone does not equate to "gross and pervasive discrimination." *Wanger*, 872 F.2d at 145 (citation omitted). She also points out that Cornerstone had never hired a female high school principal. However, Russell herself served as interim principal from June 7, 2015, to July 20, 2015. Russell cannot establish an atmosphere of futility because she points to no evidence of gross and pervasive discrimination on the basis of sex. *See e.g.*, *Int'l Bhd. of Teamsters*, 431 U.S. at 337–38 (finding the plaintiff established gross and pervasive discrimination using statistical evidence and "the testimony of individuals who recounted over 40 specific instances of discrimination").

Russell also argues that her failure to apply should be excused because Cornerstone "abandon[ed] [its] hiring process for the principal position and named Phillip Price the next principal" after Russell filed her EEOC charge of discrimination. CA6 R. 18, Appellant Br., at 34. However, Price was named interim principal on December 6, 2019, immediately after Davis was fired. Russell did not file her EEOC charge until January 7, 2020. While Cornerstone did immediately name Price and later Humphrey interim principal without asking for applications, they soon thereafter posted the principal position and interviewed for it. Russell never applied or interviewed for the position, nor did she indicate interest. While Cornerstone named Price principal of the combined high school on January 24, 2020, after Russell filed her EEOC charge, Russell does not provide evidence showing that Cornerstone's decision to combine two high schools and name Price principal of the combined school occurred as a result of her filing an EEOC charge. Russell thus did not establish a prima facie case of discriminatory failure to promote.

**IV**

Russell cannot prove Cornerstone's proffered reason for her demotion was pretextual. She failed to exhaust her administrative remedies for her failure to promote claim as required under Title VII. Finally, she did not apply for the principal position and thus cannot establish a prima facie case on her ELCRA failure to promote claim. We affirm.